UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSEPH H.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 1:25-cv-00359 (JGW)

---

J. Gregory Wehrman, U.S. Magistrate Judge,

**MEMORANDUM-DECISION and ORDER**

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 7, 13), as well as Plaintiff's reply brief (Doc. 14). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 7) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I. RELEVANT BACKGROUND

### A. Procedural Background

On May 24, 2023, Plaintiff protectively filed an application for disability and disability insurance benefits, alleging an onset date of August 22, 2022. (Tr. 90, 214-15.) Plaintiff's claim was denied initially and upon reconsideration. (Tr. 89, 104.) He then

requested a hearing before an Administrative Law Judge (ALJ). (Tr. 151-72.) Plaintiff appeared with counsel for a telephonic hearing before ALJ Anna Wright held on July 15, 2024. (Tr. 34-88.) On December 23, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. (Tr. 14-33.) The Appeals Council denied his request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to this Court.

**B. Factual Background**

Plaintiff was born September 21, 1980. (Tr. 90.) He graduated from high school and ultimately obtained a college degree in organizational security management. (Tr. 44, 45.) In between high school and college, he enlisted in the military following 9/11. (*Id.*) He served from early 2002 until 2007 and saw significant combat, causing posttraumatic stress disorder (PTSD). (Tr. 45-46.) After leaving the military, he worked for the government doing background investigations for contractors and noncontractors, which he continued to do remotely and on a part-time basis through at least the time of the hearing. (Tr. 47.)

**1. Plaintiff's Hearing Testimony**

At the hearing the ALJ and Plaintiff's counsel identified Plaintiff's impairments to include depression, anxiety, and PTSD, spinal issues, irritable bowel syndrome, obstructive sleep apnea, and knee pain. (Tr. 41.) Plaintiff also noted additional issues, including traumatic brain injury, tinnitus, patella pain syndrome, degenerative arthritis of the spine and in general, paralysis of the sciatic nerve, sinus issues, and Meniere's disease. (Tr. 43.)

Plaintiff testified about his conditions and their effects. He noted that he was diagnosed with cluster headaches and generally encountered them a few times a year.

(Tr. 53.) He described the pain as "excruciating" and centering around his left eye and eyebrow. (*Id.*) Plaintiff also testified to still having issues with vertigo, explaining that items would sometimes spin or keep moving even when he was stationary. (Tr. 54.) He also noted that being in a department store, looking down a hallway, having to be on the floor, or increased stress caused the spinning or loss of balance sensation. (Tr. 54-55.) He indicated he may experience vertigo a couple of times a week, where "it is somewhat minimal." (Tr. 55.) He described the vertigo episodes lasting thirty seconds to a minute, but he indicated that the remainder of his day would be affected. (Tr. 56-57.) Plaintiff also noted that his PTSD and anxiety were always present and that going to cities increased his anxiety. (*See* Tr. 55, 61-62, 63.) He indicated that he took medication for these issues, but they seemed to impact his irritable bowel syndrome and make him tired. (Tr. 64-65.)

Plaintiff also described issues with his back, which resulted from an injury during combat. (Tr. 62.) Plaintiff testified that his pain was always present, although medication did help numb it. (Tr. 62, 66.) After sitting for an extended amount of time, the pain tended to increase, and he would get back cramps. (Tr. 62, 66.) Specifically, he noted being able to sit for only ten minutes before needing to stand up but then could only stand for maybe ten to fifteen minutes before needing to sit due to knee pain. (Tr. 66-67.) Sometimes, his knee pain syndrome would cause his knees to lock up, and then he must stand up. (Tr. 62.) Plaintiff described that he could walk a mile if he needed to, but that exertion may limit his ability to walk again for the next day or two. (Tr. 67.) Additionally, he noted that walking up steps was very painful on his knees and, while he can generally go up and down a flight of stairs, he has tripped due to his knees locking up. (*Id.*) He

described he could pick up maybe fifty pounds but could not hold it for more than thirty seconds before needing to put it down. (Tr. 68.) He explained that he struggled switching from sitting to standing, as well as from lying to standing. (Tr. 69.)

Plaintiff also discussed other issues he experienced, including ringing in his ears on a daily basis. (Tr. 62.) Additionally, he experienced sciatic pain down his left thigh from his hips. (Tr. 62-63.) He listed certain medications he took to address the pain and muscle spasms, explaining they made him tired. (Tr. 66.)

Plaintiff testified to his mental limitations as well. He described some difficulties with remembering things. (Tr. 70.) He also explained that he lost focus relatively quickly and sometimes procrastinated tasks. (*Id.*) He indicated that feeling stressed or overwhelmed may cause him to speak fast, be short with people, and make more mistakes. (Tr. 71.) His pain interfered with his ability to concentrate. (Tr. 62.) Plaintiff also explained that he sometimes experienced panic attacks as a result of his anxiety, which lasted ten to fifteen minutes but impacted the remainder of his day. (Tr. 72.)

He also described experiencing daily flashbacks to his military deployments. (Tr. 73.) He explained that crowds and a lot of traffic generally trigger his PTSD, as do situations in which he lacks control. (Tr. 73-74.)

Plaintiff described that he prepares dinner for his family every night and can make himself sandwiches. (Tr. 74.) He is also able to clean up the dishes, although he indicated that his kids normally do that as part of their responsibilities. (Tr. 74-75.) He does not generally go grocery shopping, due to the bright lights and long aisles triggering his vertigo. (Tr. 75.) He explained that his wife does the vacuuming and sweeping, as

well as the laundry. (*Id.*) He noted that, if he needed to vacuum, he felt he could probably do that. (*Id.*) He manages personal cares tasks. (Tr. 77.)

Plaintiff testified that before going into the military, he enjoyed outdoor hobbies such as mountain biking and snowboarding, as well as concerts, none of which he could do after he returned because of his inability to control those situations. (Tr. 76.) He does not engage in church or social activities due to his concern with crowds. (*Id.*) He described that he reads, watches tv, and remains in his home focusing on his family. (*Id.*)

**2. Medical Expert Opinions**

Upon initial review, agency reviewer Dr. Kamin found Plaintiff's mental limitations to be nonsevere and assigned mild limitations in all paragraph B categories. (Tr. 92.) Dr. Abueg assigned a light exertional level and further found that Plaintiff could only occasionally climb ramps, stairs, ladders, ropes, scaffolds, and only occasionally stoop. (Tr. 93-94.) Upon reconsideration, Dr. Haus affirmed the mental limitation findings, (Tr. 100), and Dr. Saeed affirmed the physical limitation findings, (Tr. 101-02).

Consultative examiner Dr. Russell Lee evaluated Plaintiff's physical limitations in September 2023. (Tr. 601-08.) He issued a medical source statement finding that Plaintiff had "moderate limitation for prolonged sitting, prolonged standing, climbing stairs." (Tr. 605.)

In November 2023, consultative examiner Dr. Gregory Fabiano evaluated Plaintiff's mental limitations. (Tr. 614-19.) Dr. Fabiano recognized that, on the mental status examination, Plaintiff "could not recall 3 out of 3 objects after a delay," which he found to be "inconsistent with his employment history." (Tr. 617.) He concluded that the inconsistency was related to distractibility. (*Id.*) Dr. Fabiano found that Plaintiff had "mild

limitations in ability to understand, remember, or apply simple and complex directions and instructions;" "moderation limitations in ability to interact adequately with supervisors, coworkers, and the public and regulate emotions, control behavior, and maintain well[-]being;" and "no limitation in ability to use reason and judgment to make work-related decisions, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and have awareness of normal hazards and take appropriate precautions." (Tr. 617-18.) He concluded that the "[r]esults of the examination appear to be consistent with psychiatric problems but, in itself, does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Tr. 618.)

Gregory Clark, a licensed counselor social worker (LCSW), who worked with Plaintiff at the VA, wrote a letter in February 2024. (Tr. 707-08.) He stated that, pertaining to his PTSD, Plaintiff "struggles most with being in crowds or where there are many people and he can't reasonably assess safety and can't find a clear path out of his circumstances should he encounter trouble." (Tr. 707.) He further noted that Plaintiff's "anxiety is quite significant and causes distress in many areas of his life including his relationship with his wife and children, social activities, work, and following through with medical appointments." (*Id.*) Counselor Clark noted that Plaintiff's current employment "requires him to drive to cities and localities that are too populated for him to comfortably go" and noted that, as a result, he has limited his work that allows him to stay in the countryside. (*Id.*) He opined that Plaintiff "is not able to provide sustainable employment income for his family," noting this added tension at home. (*Id.*) He further acknowledged that Plaintiff's anxiety causes "reduced sleep, poor appetite, a low frustration tolerance and

IBS symptoms." (*Id.*) Counselor Clark opined that "[t]he expectations of having to work, his lack of success in following through with the obligations of work, and the unfortunate nature of living with his PTSD and depressive symptoms does [sic] not make [Plaintiff] a good candidate to work at the present time." (*Id.*) He recognized that Plaintiff's continuation in therapy would likely improve his quality of life but would likely not provide significant strides in his PTSD limitations. (Tr. 707-08.)

**C. ALJ's Decision**

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027. (*See* Ex. 13D). (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity since August 22, 2022, the alleged onset date. *See* 20 C.F.R. § 404.1571 *et seq*. (Tr. 19.)

3. The claimant has the following severe impairments: PTSD, depression, paralysis of the sciatic nerve, and degenerative arthritis of the spine. *See* 20 C.F.R. § 404.1520(c); SSR 85-28. (Tr. 20.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 21.)

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. He can perform occasional postural movements. He can tolerate up to moderate exposure to noise. He can never be exposed to common workplace hazards like unprotected heights and moving mechanical parts. He can never drive as a job duty. He can never interact with the public, and he can occasionally interact with coworkers and supervisors. (Tr. 22.)

6. A finding regarding the claimant's capacity for past relevant work is not material because all potentially applicable Medical-Vocational Guidelines would direct a finding of not disabled given the individual's age, education, and residual functional capacity, regardless of past relevant work. *See* 20 C.F.R. §§

404.1520(h) and 416.920(h). Transferability of job skills is also not at issue. *See* 20 C.F.R. § 404.1568. (Tr. 27.)

7. The claimant was born on July 21, 1980, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *See* 20 C.F.R. § 404.1563. (Tr. 27.)

8. The claimant has at least a high school education. *See* 20 C.F.R. § 404.1564. (Tr. 27.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 404.1569 and 404.1569a. (Tr. 27.)

10. The claimant has not been under a disability, as defined in the Social Security Act, from August 22, 2022, through the date of this decision. *See* 20 C.F.R. § 404.1520(g). (Tr. 28.)

## II. LEGAL STANDARD

### A. Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by

evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B. Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers

in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III. ANALYSIS

Plaintiff argues that remand is appropriate for several reasons. First, Plaintiff contends that the ALJ erred by finding Plaintiff's Meniere's Disease to be a non-severe impairment and, at a minimum, failing to account for Plaintiff's Meniere's Disease when determining the RFC. (Doc. 7-1 at 14-17.) Next, Plaintiff maintains that the ALJ failed to correctly analyze Plaintiff's subjective complaints regarding his PTSD symptoms. (*See id.* at 17-23.) Plaintiff also asserts that the ALJ did not analyze Plaintiff's ability to handle stress or properly account for his stressors in the RFC. (*See id.* at 23-25.) Finally, Plaintiff argues that the ALJ failed to properly analyze the opinion of Plaintiff's treating mental health provider. (*See id.* at 25-29.)

### A. The ALJ Properly Analyzed Plaintiff's Meniere's Disease Impairment.

Plaintiff contends that the ALJ erred by finding his Meniere's Disease to be a non-severe impairment because the medical evidence demonstrates that he was substantially limited by this condition. (*See id.* at 14-15.) He further maintains that, even if Plaintiff's Meniere's Disease was non-severe, the ALJ erroneously failed to consider limitations imposed by this impairment in formulating the RFC because the limitations assigned by the ALJ as addressing this condition did not address the well-documented triggers of his vertigo. (*See id.* at 16.)

A "severe" impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). However, an ALJ is required to consider all of a claimant's medically determinable impairments, severe and

non-severe, when assessing a claimant's RFC. *See Annette A. v. Comm'r of Soc. Sec.*, Case No. 23-cv-6087-FPG, 2024 WL 2956906, at *2 (W.D.N.Y. June 12, 2024). The severity analysis of step two is "analytically distinct" from the formulation of the RFC, so "[t]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *See id.* (quoting *MacDonald v. Comm'r of Soc. Sec.*, No. 17-cv-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019)) (internal quotation marks omitted). Further, the analysis at steps 4 and 5 should include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL374184, at *7 (July 2, 1996). "Remand may be necessary where the ALJ fails to properly consider the impact of a claimant's nonsevere impairments on the RFC." *See Annette A.*, 2024 WL 2956906, at *2 (internal citations omitted).

At step two, the ALJ found Plaintiff's Meniere's Disease to be a non-severe impairment:

> Looking more closely at the claimant's traumatic brain injury and Meniere's disease, these two diagnoses are connected to the claimant's report of service-connected concussions and head injuries. (Ex. 7F63). . . . He has reported some post TBI-vertigo, which was described as atypical Meniere's disease. (Ex. 7F40). However, he has generally denied dizziness or spinning, and reported that his vertigo passes within seconds. (Ex. 10F44-72). Thus, I find these impairments are non-severe because there is no evidence in the record that they have more than a minimal effect on the claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521; SSR 85-28.

(Tr. 20.)

Plaintiff contends that the ALJ's evaluation ignores "evidence such as abnormal Subjective Visual Vertical testing, and abnormal audiology testing indicating problems

with vestibular functioning." (*See* Doc. 7-1 at 15.) But test results do not explain the functional impact a particular condition might have, which is the critical issue in finding an impairment severe or non-severe. *See* 20 C.F.R. § 404.1520(c). While Plaintiff identifies certain test results as well as some treatment notes, he does not identify any evidence that describes Plaintiff Meniere's Disease as limiting his functional ability beyond what the ALJ described. In his medical records, he consistently referred to his vertigo lasting only a few seconds. (*See*, *e.g.,* Tr. 537-38.) At one point, he even categorized his dizziness as "well-controlled." (*See* Tr. 591.) And his hearing testimony described his vertigo episodes lasting thirty seconds to a minute. (Tr. 56-57.) Thus, substantial evidence supports the ALJ's classification of Plaintiff's Meniere's Disease as non-severe.

Plaintiff further asserts that the ALJ failed to properly account for this impairment in the RFC because the limits attributed to Meniere's Disease do not relate to the identified triggers of looking down long hallways or aisles, being under fluorescent lights such as in department stores, stress, and exposure to bright lights. (*See* Doc. 7-1 at 16.) But an ALJ is not required to formulate an RFC that prevents impairments from manifesting. Rather, she is to formulate an RFC that reflects the most a claimant can still do despite his limitations and is based on all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).

Here, in her RFC analysis, ALJ Wright clearly considered Plaintiff's vertigo. She noted Plaintiff's hearing testimony that he "has difficulty when driving due to his traumatic brain injury causing headaches and vertigo" and that "[h]is headaches and vertigo are affected by stress and light, and they happen a couple times per week, for 30-90 seconds at a time." (Tr. 23.) In her evaluation of medical expert evidence, the ALJ noted that she

"found greater postural limitations to occasional balancing, kneeling, crouching, and crawling, and environmental limitations to moderate noise exposure and never being exposed to hazards due to his reports of tinnitus, Meniere's disease, and his history of a traumatic brain injury." (Tr. 25.)

It is clear that the ALJ considered Plaintiff's Meniere's Disease and related vertigo, noting specifically that she chose to implement additional postural limitations that may be limited by this condition. (*See id.*) Logically, a person's ability to balance, kneel, crouch, and crawl may be affected by vertigo that lasts thirty to ninety seconds at a time. Moreover, Plaintiff testified at the hearing that having to be on the floor caused the spinning or loss of balance sensation. (Tr. 54-55.) Thus, the ALJ has, based on her consideration of the totality of the evidence, concluded that these limitations reflect the most Plaintiff could perform if he were to experience vertigo for up to ninety seconds.

Importantly, Plaintiff has not shown he is *incapable* of performing such work, which is his burden. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (noting that a plaintiff has the burden to prove a more restrictive RFC). Therefore, the Court finds that the ALJ's RFC sufficiently addresses the functional limitations related to Plaintiff's Meniere's Disease as supported by substantial evidence in the record.

**B. The ALJ Correctly Analyzed Plaintiff's Subjective Complaints.**

Plaintiff next contends that the ALJ failed to correctly analyze his subjective complaints regarding his PTSD symptoms, as he overly relied on Plaintiff's normal mental status exams and activities of daily living. (Doc. 7-1 at 17-18.) He further maintains that the ALJ's analysis of subjective complaints was improper because (1) conservative treatment does not mean Plaintiff's symptoms are not limiting; (2) Plaintiff's activities of

daily living do not reflect his ability to work in a national economy; and (3) Plaintiff's unremarkable mental status evaluations do not negate reports of consistent PTSD and anxiety symptoms. (*See id.* at 19.)

"A claimant's subjective complaints are 'an important element in the adjudication of [Social Security] claims, and must be thoroughly considered in calculating the RFC of a claimant.'" *Castillo v. O'Malley*, No. 24-41-CV, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024) (quoting *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010)). "At the same time, an ALJ is 'not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'" *Id.* (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).

The ALJ must employ a two-step analysis to evaluate a plaintiff's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit a plaintiff's ability to do work. *See id.*

When addressing this second prong, an ALJ must consider the objective medical evidence and other evidence in the record, including statements by the plaintiff and reports from both medical and non-medical sources, and must evaluate the intensity, persistence, and limiting effects of the plaintiff's symptoms, considering relevant factors

which include evidence regarding (1) daily activities, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) factors that precipitate or aggravate the claimant's symptoms, (4) the type, dosage, effectiveness, and side effects of medication, (5) any treatment other than medication that is used to relieve the symptoms, (6) other measures to obtain relief of symptoms, and (7) any other relevant factors. *Lynn V. v. Comm'r of Soc. Sec.*, 6:24-cv-43, 2024 WL 5454786, at *7 (N.D.N.Y. Dec. 2, 2024) (citing 20 C.F.R. § 404.1529(c)(3)). *See also* 20 C.F.R. § 404.1529(c)(4) (requiring the ALJ to consider "the extent to which there are any conflicts between [subjective statements regarding symptoms] and the rest of the evidence.")

"[T]he court must uphold the ALJ's decision to discount a [plaintiff's] subjective complaints of pain if the finding is supported by substantial evidence. It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the [plaintiff]." *Shateara E. v. Comm'r of Soc. Sec.*, No. 21-CV-00360-FPG, 2023 WL 5603217, at *4 (W.D.N.Y. Aug. 30, 2023) (internal citations and quotation marks omitted); *see also Torres v. Comm'r of Soc. Sec.*, 22-cv-00003-MJP, 2024 WL 5090815, at *4 (W.D.N.Y. Dec. 12, 2024) (noting that the "credibility findings of an ALJ are entitled to great deference and are reversible only if they are patently unreasonable.") (internal citations and quotation marks omitted)

The ALJ analyzed Plaintiff's subjective complaints:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the evidence of record reflects conservative treatment for his impairments, and his activities of daily living are not consistent with disabling impairments. Although the claimant is partially service-connected due to his spinal impairments, the evidence of record reflects conservative treatment for his back pain consisting of medication management and heat. (Ex. 7F63; 10F90-94). His X-ray reflected at most mild spondylosis. (Ex. 7F65). In

> treatment, he has generally presented with normal muscle bulk, no atrophy, full range of motion of the extremities, normal range of motion of the lumbar and cervical spine, normal gait, and the ability to tandem walk. (Ex. 7F14-64; 10F90-94). Thus, the evidence of record and treatment modalities do not call for greater limitations than those found in the above residual functional capacity.
>
> Turning to his mental impairments, although he has reported some difficulty around groups of people and difficulty in densely populated areas, the evidence of record reflects that he generally denied depression, anhedonia, and hopelessness. (Ex. 2F60-69; 7F29-54). Additionally, he reported that he can dress, bathe, groom himself, cook and prepare food, manage money, drive, clean, and perform childcare of his four children daily. (Ex. 4F3; 6F4). In July 2023, he reported that he was working part-time doing security clearances, and that he lives on a farm with 30+ acres, is growing vegetables, and raising chickens and pigs, and he tries to stay as self-sufficient as possible. (Ex. 7F35). Thus, while the claimant has impairments that cause functional limitations, his statements do not call for further restrictions than those included in the above residual functional capacity.

(Tr. 24-25.)

The Court finds that the ALJ properly evaluated Plaintiff's subjective complaints and that her findings are supported by substantial evidence. In concluding that Plaintiff's subjective statements were inconsistent with disabling impairments, the ALJ noted his conservative treatment and his activities of daily living. (Tr. 24.) Contrary to Plaintiff's position, the ALJ is permitted to consider these factors, and both, as she rightly noted, weighed against Plaintiff's subjective statements. *See Lynn V.*, 2024 WL 5454786, at *7 (recognizing that the ALJ can consider, among other factors, a claimant's daily activities and treatment); *see also Tricarico v. Colvin*, 681 F. App'x 98, 100-01 (2d Cir. 2017) (recognizing that the ALJ properly considered the claimant's conservative treatment involving pain relief medication and physical therapy).

While Plaintiff argues that the ALJ put too much weight on his ability to perform daily tasks, given his documented limitations in performing these daily tasks, this merely

identifies a conflict in the evidence and Plaintiff's disagreement with the ALJ's resolution of this conflict. It is well settled that conflicts within the evidence are to be resolved by the ALJ, *see Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and once resolved by the ALJ, they cannot be overturned by this Court unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin, Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citation omitted). Thus, the Court is plainly prohibited from re-weighing the evidence, which is the crux of what Plaintiff requests. *See Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."). Simply put, Plaintiff's disagreement with the ALJ's resolution of conflicting evidence is not grounds for remand. *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").

Moreover, contrary to Plaintiff's argument that the ALJ did not consider Plaintiff's move to the countryside or his life alterations to avoid travelling to cities, the Court notes that the ALJ expressly attributed her limitations regarding interacting with others to Plaintiff's reported difficulty being around others and in densely populated areas. (*See* Tr. 26) (noting the imposition of "greater limitation in interacting with others due to Plaintiff's reports of difficulty being around others and being in densely populated areas due to his PTSD;" acknowledging that Dr. Fabiano's assessment of moderate limitation in interacting with others is "consistent with the evidence of record reflecting reports of

PTSD symptoms around groups of people and in big cities, but that he was generally fully oriented, had neutral mood, logical thoughts, normal speech, good insight and judgment, and intact cognition").

Accordingly, the Court finds no error in the ALJ's analysis of Plaintiff's subjective complaints.

**C. The ALJ Adequately Addressed Plaintiff's Abilities Regarding Stress.**

Plaintiff also asserts that the ALJ did not analyze his ability to handle stress, nor did she properly account for the limitations Plaintiff experienced as a result of his stress in the RFC. (Doc. 7-1 at 23.)

The Court acknowledges that "an ALJ is required to make a thorough, individualized assessment of stress in his or her RFC." *Annarino v. Comm'r of Soc. Sec.*, No. 18-cv-130-JWF, 2019 WL 4643604, at * 2 (W.D.N.Y. Sept. 24, 2019) (citing *Petrie v. Astrue*, No. 08-cv-1289, 2010 WL 1063836, at *2 (N.D.N.Y. Mar. 19, 2010)). "Specifically, the ALJ must address the individual's ability 'to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.'" *Id.* (quoting Soc. Sec. Ruling 85-15, 1985 WL 56857, at *4-5 (1985)).

The Court finds that the ALJ's decision adequately analyzes Plaintiff's ability to handle stress. Specifically, the ALJ analyzed Plaintiff's ability to understand, carry out, and remember simple instructions in her Paragraph B analysis as well as her evaluation of the expert opinions. (*See* Tr. 21-22; 25-26.) The ALJ acknowledged that Plaintiff reported stress increased his symptoms. (Tr. 23.) And, significantly, because the ALJ concluded that one of Plaintiff's severe impairments was PTSD, her RFC analysis, which

included the evaluation of Plaintiff's abilities, inherently requires consideration of Plaintiff's ability to handle stress.

To the extent Plaintiff identifies facts he contends supports more significant limitations, these are nothing more than conflicts within the evidence to be resolved by the ALJ. *See Veino*, 312 F.3d at 588. And Plaintiff has not shown that "a reasonable factfinder would *have to conclude otherwise*" and impose greater limitations. *See Brault*, 683 F.3d at 448.

The Court finds that the ALJ's decision sufficiently analyzed Plaintiff's ability to respond to stress.

**D. The ALJ Properly Evaluated LCSW Clark's Opinion.**

Finally, Plaintiff argues that the ALJ improperly analyzed LCSW Clark's opinion because she considered only the length of the treatment relationship, instead of evaluating all necessary factors. (Doc. 7-1 at 25.) Moreover, he contends that the ALJ wrongly rejected Counselor Clark's opinion because Plaintiff's mental status examinations were normal at his visits with Counselor Clark. (*See id.* at 27.) Finally, Plaintiff maintains that the ALJ did not thoroughly consider the supportability of Counselor Clark's opinion with the evidence in the record. (*See id.*)

With regard to an ALJ's consideration of medical opinion evidence, the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, provide that the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1)

supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source in the opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between a medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

The ALJ evaluated Counselor Clark's opinion, finding it not to be persuasive.

> Gregory Clark, LCSW-R, provided a letter dated February 20, 2024, and stated that the claimant has significant PTSD and anxiety, making him unable to complete work requested of him, he cannot attend medical appointments, he has difficulty completing tasks on time, and he is not a good candidate for working at this time. (Ex. 9F2-3). This opinion is not persuasive. Although this opinion is from the claimant's treating provider, this opinion is not supported by Mr. Clark's treatment of the claimant, which consisted of two visits. (Ex. 7F9-10; 10F52). Additionally, this opinion is not supported by Mr. Clark's examinations during those visits, reflecting cooperative attitude, normal motor activity, normal affect, neutral mood, normal speech, intact thought processes, no delusions, full orientation, intact cognitive function, intact memory, and intact insight and judgment. (Ex. 7F9-10; 10F52-53). This opinion is not consistent with the evidence of record reflecting that the claimant was generally cooperative, well-groomed, fully oriented, had logical thoughts, normal speech, good insight and judgment, and intact attention, concentration, and cognition. (Ex. 6F3-4; 7F29-54).

(Tr. 26-27.)

Having carefully reviewed the record, the Court finds that the ALJ properly analyzed LCSW Clark's opinion. Plaintiff does not dispute that he treated with Counselor Clark for only two visits, arguing only that the opinion is supported by other evidence in the record. However, Plaintiff seems to confuse supportability with consistency, as supportability focuses on how the evidence presented by the source supports that opinion, while consistency compares the evidence in the record with the conclusions set forth by the source. *See Rosario*, 2022 WL 819810, at *8. As the ALJ noted, Counselor Clark's significant restrictions are not supported by the treatment notes from the two visits, as those notes primarily identify topics of discussion only, as well as unremarkable mental health examinations, but nothing to support the functional limitations identified by Counselor Clark. (*See* Tr. 628-29, 761-62.) Moreover, while Plaintiff points to evidence within the record to support Counselor Clark's limitations regarding social contact or

presence in crowds, the Court notes that the ALJ imposed limitations on Plaintiff's contact with the public and coworkers and supervisors. (*See* Tr. 22) (concluding that Plaintiff "can never interact with the public, and he can occasionally interact with coworkers and supervisors"). While the ALJ did not accept Counselor Clark's conclusion that Plaintiff's social limitations eliminated his ability to work, such a conclusion is limited to the ALJ, as she rightly acknowledged. (*See* Tr. 27) (citing 20 C.F.R. § 404.1504).

Contrary to Plaintiff's position, the Court does not find that the ALJ inconsistently considered the length of treatment relationship when analyzing the opinions of Counselor Clark and Dr. Fabiano. The ALJ found Dr. Fabiano's opinion persuasive in part, specifically analyzing how his conclusions were or were not supported by his examination—which is the extent of Dr. Fabiano's interaction with Plaintiff. (*See* Tr. 26.) The ALJ specifically noted that certain of Dr. Fabiano's conclusions were not supported by the examination nor consistent with the record and discounted that portion of the opinion. (*See id.*) Thus, the Court finds the ALJ consistently analyzed the opinions.

Finally, Plaintiff seems to argue that the ALJ should have imposed limitations on Plaintiff's ability to complete simple tasks or to do so at a reasonable pace. (*See* Doc. 7-1 at 28-29.) While Plaintiff identifies certain facts he contends supports such limitations, the Court notes that no other medical expert opined to such limitations. (*See, e.g.*, Tr. 617-18) (concluding that Plaintiff had mild limitations in applying simple and complex directions and instructions and no limitations in performing tasks at a consistent pace). Thus, the Court concludes that Plaintiff has, once again, identified an issue involving conflicting evidence which has been resolved by the ALJ but has not shown that a reasonable factfinder would have to conclude such limitations were required. *See Brault*,

683 F.3d at 448. Plaintiff has simply not shown that "the record requires a reasonable factfinder to reach a different result." *See Spottswood v. Kijakazi*, No. 23-54-cv, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (summary order).

Accordingly, the Court finds no error.

## IV. CONCLUSION

Based on the foregoing, the Court finds no basis for remand. **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 7) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 13) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: October 21, 2026
Rochester, New York

J. Gregory Wehrman J.G.W.
HON. J. Gregory Wehrman
United States Magistrate Judge